UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CAUSE NO. 3:11-cv-432-RL-CAN |
| PULLIAM ENTERPRISES, INC., *et al.*, | )<br>)<br>)<br>) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

On August 18, 2015, Defendants, Pulliam Enterprises, Inc. and Robert Lodholtz, filed their Motion for Sanctions and Request for Rule to Show Cause. On September 4, 2015, Plaintiffs, Granite State Insurance Company and New Hampshire Insurance Company (collectively "the Insurers"), filed their brief in opposition to Defendants' motion. The motion became ripe on September 10, 2015, when Defendants filed their reply brief. On August 25, 2015, Defendants' motion was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B) and N.D. Ind. L.R. 72-1. For the reasons discussed below, the undersigned recommends that the Court deny Defendants' motion.

**I.     RELEVANT BACKGROUND**

A central, if not the ultimate, question in this long-running consolidated case is whether the Insurers denied coverage and a defense to Pulliam in the underlying Indiana action initiated by Lodholtz against Pulliam. Not surprisingly, the Insurers and Defendants have taken diametrically opposed views on this issue. Specifically, the parties view the effect of communications between Pulliam and Granite State's third-party claim administrator, York Risk

Services Group, Inc. ("York"), in August and September 2011 differently. This lawsuit will determine who is right.

The summer of 2011 was important in the underlying Indiana litigation because the time for Pulliam to file an answer to Lodholtz's complaint had not yet passed. Lodholtz had sued Pulliam based on the injury he suffered while working on Pulliam's premises. In early July 2011, Pulliam tendered the lawsuit to York seeking coverage under its primary and umbrella policies from the Insurers. York handled the day-to-day operations of Pulliam's claim for coverage under the Granite State policy. About nine days after receiving the claim, York's adjuster discussed the Lodholtz accident with Pulliam's owner and advised him that "there were some coverage issues to review." Doc. No. 205-9 at 21.

York's adjuster then consulted with Kevin Westerlaken, a Claims Management Analyst with Chartis Vendor Services[1] who oversaw York's handling of Pulliam's request for coverage, about the possibility that the Granite State policy's employer's liability exclusion might preclude coverage. In keeping with the company's regular procedures, the York adjuster prepared a first draft of a coverage position letter and sent it to Westerlaken to review on August 10, 2011. Shortly thereafter, York assigned a new adjuster to the Pulliam case. On August 18, 2011, Westerlaken informed the new adjuster that he would review the draft coverage letter and also stated that Granite State "will probably be denying coverage." *Id.* at 16.

In the mean time, York secured an extension from the court in the underlying action giving Pulliam until August 19, 2011, to file its answer. That date came and went without an

---

[1] During the course of this litigation, Chartis has changed its name to AIG. In this order, the Court will refer to this entity as Chartis.

answer being filed. Consequently, the Indiana court entered a default judgment on liability against Pulliam on August 23, 2011.

On that same day, Westerlaken informed the York adjuster that he was working on getting the coverage position letter, which denied coverage, approved. The company's procedure required that coverage position letters be approved by in-house claims counsel before being sent to an insured in cases where a claim was being denied. Noting that a denial was "highly likely," Westerlaken told the York adjuster to inform Pulliam to "retain defense counsel and in the event there was coverage [Granite State] would reimburse." *Id.* The York adjuster did just that late that afternoon—the same afternoon the Indiana court entered default judgment against Pulliam. Through an e-mail, the York adjuster indicated that "Granite State does not appear to cover this loss" and that "[a]n official coverage position will be forwarded to Pulliam Enterprises in the near future." *Id.* at 14. The adjuster's message concluded informing Pulliam that "[i]n the event Granite State determines they do provide coverage, they will reasonable [sic] reimburse any defense costs." *Id.*

The next day on August 24, 2011, a Pulliam attorney initiated contact with the York adjuster regarding the previous day's news. Of particular concern to Pulliam was the default judgment leading him to threaten legal action against Chartis and York if steps were not taken to vacate the judgment and defend the action. Among other things, the York adjuster repeated that coverage "does not appear" to exist and advised taking steps to protect Pulliam in the underlying litigation. *Id.* In a letter memorializing the conversation, the attorney described the adjuster's message on August 23rd as noting that "coverage for the claim might be excluded," and asked the adjuster to "advise Granite State that, given what has occurred to date in this matter, it must

3

immediately provide an official coverage position to Pulliam as referenced in your August 23 email." Doc. No. 205-13 at 3.

After discussing the attorney's concerns with Westerlaken, the York adjuster—at Westerlaken's direction—emailed the attorney on August 25, 2011, stating: "[I]t is suggested that you continue your efforts to have the default Order vacated . . . . Chartis is having coverage counsel review the applicable coverage(s) as discussed and will report its position as soon as practicable." Doc. No. 288-3 at 2. Although not explicitly mentioned in the email, Westerlaken had told the York adjuster that "it remains [Granite State's] belief that there likely is no coverage." Doc. No. 205-9 at 12.

In addition to the adjuster's response to the attorney's August 24th letter, the attorney received a letter dated August 26, 2011, from York's General Counsel stating: "It is my understanding that the insurer, Granite State, has issued or will shortly issue or direct York to issue a letter denying coverage." Doc. No. 81-9 at 2. Through the letter, York's General Counsel urged Pulliam again to "take immediate action to vacate the default and defend itself in this matter." *Id.*

Despite York's General Counsel's indication that a coverage letter would issue shortly thereafter, York did not send the coverage letter until September 13, 2011. In the mean time, Chartis continued to investigate Pulliam's claim. As directed by Westerlaken, the York adjuster ultimately sent the coverage letter on September 13, 2011, once it was approved indicating that Granite State would defend Pulliam under a reservation of rights. The York adjuster's accompanying cover email read:

> Please see the attached Reservation Of Rights letter in the above captioned matter. Granite State has agreed to defend Pulliam at this time subject to the conditions outlined in the letter.
>
> I ask that [Pulliam's individual counsel] contact me as soon as able to discuss the status of the default and the pending substitution of counsel.

Doc. No. 205-9 at 11. After receiving the coverage letter on the morning of September 14, 2011, Pulliam's counsel sent a letter to the York adjuster rejecting Granite State's offer to defend the underlying lawsuit. Doc. No. 205-18. Pulliam rejected the defense based on its execution of a Covenant with Lodholtz on September 7, 2011, that resulted in Pulliam abandoning all of its substantive defenses in the underlying lawsuit and assigning any of its claims against the Insurers to Lodholtz.

Once this lawsuit was filed on November 3, 2011, the Insurers represented on multiple occasions that Granite State did not deny coverage and did not deny a defense to Pulliam. The record shows at least fourteen such written representations to the Court between January 16, 2012, and August 5, 2015. In their deposition of Westerlaken on August 7, 2015, Defendants inquired about the events of those 2-1/2 months in the summer of 2011 before the reservation of rights letter was delivered. Westerlaken testified that he had directed the York adjuster to inform Pulliam that coverage would be denied. Westerlaken stated that he wanted Pulliam to know about the denial of coverage. Westerlaken also noted that he was aware of the consequences if Granite State wrongfully denied coverage and a defense.

Interpreting Westerlaken's deposition testimony as an admission that Granite State had denied both coverage and a defense to Pulliam, Defendants filed the instant motion for sanctions. Defendants argue that the Insurers have abused the judicial process through their lack of candor and intentional misrepresentations designed to manipulate this Court toward a ruling in their

favor. Defendants also allege that the Insurers sought multiple stays and filed multiple motions for summary judgment based on their contention that coverage and a defense were never denied despite their knowledge of the falsity of those assertions since the summer of 2011.

## II.   ANALYSIS

In the instant motion, Defendants ask the Court to sanction the Insurers pursuant to 28 U.S.C. § 1927 and the Court's inherent authority to sanction for their alleged lack of candor, misrepresentations, and vexatious litigation strategy. Section 1927 targets attorneys or other persons conducting cases in the court that unreasonably and vexatiously multiply proceedings in any case. With its inherent authority to preserve the integrity of judicial process and administer cases accordingly, the Court may sanction parties in response to bad-faith, vexatious, wanton, or oppressive actions taken in litigation. *Morjal v. City of Chicago*, 774 F.3d 419, 422 (7th Cir. 2014) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). As discussed below, the undersigned recommends denying sanctions under any authority.

### A.   Section 1927 Sanctions

Section 1927 permits sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." 28 U.S.C. § 1927.[2] A court may impose such statutory sanctions against attorneys upon a showing of subjective or objective bad faith. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992). Subjective bad faith may be

---

[2]In this Circuit, Section 1927 sanctions are not available against law firms. *See U.S. Indus., Inc. v. Plastech Engineered Prods., Inc.*, 525 F.3d 605, 609–10 (7th Cir. 2008); *Claiborne v. Wisdom*, 414 F.3d 715, 723–24 (7th Cir. 2005). The Insurers argue unpersuasively that this reality justifies denying Section 1927 sanctions to Defendants. The Court does not dispute the Insurers' recitation of the law. However, Defendants' filings related to this motion only seek sanctions against the Insurers themselves and the Insurers' attorneys. Defendants do not directly request sanctions against the Insurers' attorneys' law firm.

demonstrated by evidence of malice or ill will, and objective bad faith may be demonstrated by evidence of "extremely negligent conduct, like reckless and indifferent conduct." *Webster v. Hilex Poly Co.*, No. 1:06-cv-529-RLY-DML, 2008 WL 5235975, at *2 (S.D. Ind. Dec. 15, 2008). Reckless conduct is sanctionable when "the attorney's actions [are] generally so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Camarillo v. Pabey*, No. 2:05-CV-455 PS, 2007 WL 3102144, at *7 (N.D. Ind. Oct. 22, 2007) (quotations omitted).

Here, Defendants suggest that the Insurers were acting with malice or ill will in continuing to assert that it did not deny coverage or a defense because they knew the falsity of the statements as well as by seeking multiple stays and filings multiple summary judgment motions through this litigation. Defendants have presented no evidence of such malice or ill will behind the Insurers' conduct. Moreover, Defendants' evidence of the Insurers' allegedly reckless conduct—Westerlaken's testimony about his perspective of the events of the summer of 2011—does not displace the Insurers' position that they never misrepresented the denial. Indeed, the summer of 2011 communications themselves can reasonably be interpreted to support both Defendants' and the Insurers' position on this important, potentially dispositive, issue in this case.

As such, Defendants' motion for sanctions amounts to an inappropriate invocation of the Court's contempt authority in an attempt to circumvent a dispositive motion or trial to resolve the ultimate or determinative question in this breach of contract bad faith claim against the Insurers—the question of whether Granite State denied coverage and a defense to Pulliam. The Court acknowledges that Westerlaken's testimony and the 2011 communications will likely need

to be weighed by the Court or the jury in determining the denial of coverage and defense question. The mere existence of this evidence, however, does not establish any objective or subjective bad faith on the part of the Insurers in their litigation of this action. Instead, the evidence reflects one of the Insurers' defenses to Defendants' breach of contract and bad faith claims—a defense that should not be short-circuited by an award of sanctions that depends upon a premature legal conclusion about the Insurers' alleged denial of coverage and a defense. Similarly, the Insurers should not be sanctioned for consistently raising its defense regardless of the quality of its evidence.

Consequently, the undersigned recommends that the Court find that the Insurers have not unreasonably or vexatiously multiplied these proceedings and that Section 1927 sanctions are not warranted.

**B.    Inherent Authority of the Court to sanction**

Having found sanctions under Section 1927 inappropriate, the Court now turns to the question of whether sanctions for abuse of judicial process, as authorized by the Court's inherent authority, are warranted. The court "has the inherent power to sanction for conduct that abuses the judicial process." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993). "The power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expedition disposition of cases." *Id.* "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. "In deciding what measure of sanctions to impose, the district court should consider 'the egregiousness of the conduct in question in relation to all aspects of the judicial

process.'" *Dotson v. Brown*, 321 F.3d 663, 667 (7th Cir. 2003) (quoting *Barnhill v. U.S.*, 11 F.3d 1360, 1368 (7th Cir. 1994)) (emphasis omitted).

The Court also has inherent authority to sanction parties and their counsel for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Morjal v. City of Chicago*, 774 F.3d 419, 422 (7th Cir. 2014) (quoting *Chambers*, 501 U.S. at 44–45); *see also Leforge v. BAC Home Loans Servicing, LP*, No. 1:10-cv-859-TWP-DKL, 2013 WL 1296788, at *3 (S.D. Ind. Mar. 27, 2013). Despite this authority, the undersigned refuses to recommend use of its inherent authority to sanction the Insurers as Pulliam requests.

Similar to its argument for Section 1927 sanction, Defendants contend that the Court should find the Westerlaken deposition testimony determinative and hold that the Insurers (1) denied coverage and a defense to Pulliam in the underlying litigation; (2) knew this in the summer of 2011; (3) made multiple misrepresentations to this Court asserting that Granite State had not denied coverage or a defense; and (4) built their litigation strategy upon this lie. Westerlaken's testimony does not carry the weight Defendants contend it does.

"A Rule 30(b)(6) deposition produces evidence, not judicial admissions." *First Internet Bank of Ind. v. Lawyers Title Ins. Co.*, No. 1:07-CV-0869-DFH-DML, 2009 WL 2092782, at *4 (S.D. Ind. July 13, 2009). "A Rule 30(b)(6) deponent testifies as if she is the corporation, but Rule 30(b)(6) does not absolutely bind a corporate party to its designee's recollection." *Id.* (internal quotations and citations omitted). As such, Mr. Westerlaken's testimony is simply evidence that will need to be considered when the denial question is ultimately resolved on dispositive motion or at trial. As discussed above, the deposition testimony, though important evidence, does not on its own conclusively resolve the denial of coverage issue. That question is

9

the ultimate issue of this case and will be decided either by a dispositive motion or trial, but not by a motion for sanctions.

Defendants also rely heavily on *1100 W., LLC v. Red Spot Paint & Varnish Co.*, No. 1:05CV1670-LJMJMS, 2009 WL 1605118 (S.D. Ind. June 5, 2009), as support for their request for sanctions. In *Red Spot*, the court imposed the extreme sanction of default on Red Spot and its counsel for pursuing a litigation strategy based on misrepresentations made repeatedly in filings despite the knowledge of Red Spot employees that they were false and despite the knowledge of counsel that the statements were most likely false. *Id.* at *4, 33–34. Equating the Insurers' conduct with that of Red Spot is a stretch. The court in *Red Spot* outlined extensive evidence establishing the misrepresentation and its consistent misuse. Westerlaken's testimony does not compare with the obviously contumacious, wilful, and egregious conduct involved in *Red Spot*. *See id.* at *35.

As such, the undersigned is not convinced that the Insurers' statements that they did not deny Pulliam coverage or a defense constituted vexatious or bad faith conduct or resulted in an abuse of judicial process. Therefore, the undersigned recommends that the Court find sanctions under its inherent authority inappropriate in this case.

Notably, the Insurers argue that Defendants' argument for sanctions under the Court's inherent authority cannot be considered without first addressing the availability of sanctions under Fed. R. Civ. P. 11 citing *Chambers*, 501 U.S. at 50 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than [its] inherent power."). Even a Rule 11 analysis, however, leads the undersigned to recommend denying sanctions.

Fed. R. Civ. P. 11(c) allows courts to enforce Rule 11(b) by imposing sanctions on an attorney or party for frivolous filings or filings presented for an improper purpose. *See Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 656 (7th Cir. 2003); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); *Cancer Found., Inc. v. Cerberus Capital Mgmt.*, No. 07-4120, 2008 WL 927989 (N.D. Ill. Apr. 4, 2008), *aff'd*, 559 F.3d 671 (7th Cir. 2009); *Fred. A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988). When seeking Rule 11 sanctions for a frivolous or otherwise improper filing, the party must serve the motion for sanction on the allegedly noncompliant party at least 21 days before filing it with the court to give the party an opportunity to withdraw or correct the challenged filing. Fed. R. Civ. P. 11(c)(2). A court may also impose Rule 11 sanctions on its own initiative after ordering the allegedly noncompliant party to show cause why the challenged conduct does not violate Rule 11(b). Fed. R. Civ. P. 11(c)(3).

Here, it is undisputed that Defendants (1) have not sought Rule 11 sanctions against the Insurers or their counsel, and (2) did not serve the instant motion for sanctions on the Insurers before filing it with this Court. Any Rule 11 sanctions for the Insurers' alleged misrepresentations, therefore, would have to come on the Court's own initiative under Rule 11(c)(3). Undoubtedly, a deliberate misstatement or baseless statement may not be presented to the court as a statement of fact because it is sanctionable to mislead the court. *Frazier v. Cast*, 771 F.2d 259, 265 (7th Cir. 1985). A statement of fact is a representation both that the fact is true as represented, and that the person making the statement has a solid basis for doing so. *In re Kelly*, 808 F.2d 549, 551 (7th Cir. 1986). Lawyers must distinguish facts from inferences and may not represent inferences as facts. *See id.*

Despite Defendants' arguments to the contrary, however, the Insurers have not presented deliberate misstatements about the denial of coverage and defense in this case. The Insurers have not attempted to represent inferences as anything other than inferences from the facts presented in the 2011 communications and even Westerlaken's testimony, which the Insurers have not challenged. The Insurers statements about the denial of coverage and defense are more akin to the representations made in *KnowledgeAZ, Inc. v. Jim Walter Resources, Inc.*, 452 F. Supp. 2d 882, 892 (S.D. Ind. 2006). In that case, the court refused to award Rule 11 sanctions for alleged misrepresentations of fact finding them to be merely a characterization of the facts that the parties disputed rather than an actual misrepresentation. *Id.* Here, Defendants simply interpret the effects of Westerlaken's testimony combined with the 2011 communications differently than the Insurers do.

The undersigned acknowledges that all the statements about Granite State's denial decision that Defendants have cited in the instant motion are evidence that Defendants could present in a dispositive motion or at trial to support their position on the important denial question. Nevertheless, Defendants have not shown that the 2011 communications or Westerlaken's testimony expose anything but a legitimate defense by the Insurers on the denial issue. Defendants have presented insufficient evidence to show that the Insurers have consistently and deliberately misrepresented the facts supporting their position. As such, none of the Insurers' filings can be rendered frivolous or otherwise improper. Therefore, the undersigned recommends that the Court find Rule 11 inapplicable to the alleged misrepresentations in this case as well.

**III. CONCLUSION**

As discussed above, the undersigned is not persuaded that the Insurers' multiple assertions that they did not deny Pulliam coverage or a defense are improper and sanctionable. Rather the Insurers' statements are subject to interpretation and may, in context, support their defense. Whether the statements support Defendants or the Insurers is for the court to decide in considering a dispositive motion or the fact finder in a trial. For the undersigned to decide that issue now in a motion for sanctions would be both premature and improper. As a result, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion for sanctions. [Doc. No. 281].

**SO ORDERED.**

Dated this 17th day of November, 2015.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge